IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL L. FELTS,

      Plaintiff,

vs.                                                                1:21-cv-00370-LF-KK

LOUIS DEJOY, U.S. Postmaster;
CHRISTOPHER YAZZIE, Postmaster Albuquerque,

      Defendants.

## **MEMORANDUM OPINION AND ORDER**

      This matter comes before the Court on defendants Louis DeJoy and Christopher Yazzie's Motion to Dismiss and for Partial Summary Judgment.  Doc. 19.  Plaintiff Michael L. Felts opposes the motion.  Doc. 23.  Having considered the parties' submissions and the relevant law, the Court GRANTS the motion in part and DENIES it in part.

## I.     **Factual Background**

      In ruling on a motion to dismiss under FED. R. CIV. P. 12(b)(6), the Court must accept as true all facts alleged in the complaint.  *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  It also must view these factual allegations in the light most favorable to the plaintiff. *See id.*  Viewing the facts[1] alleged in the complaint in this manner, the relevant facts are as follows:

---

[1] Because defendants seek summary judgment on any of Mr. Felts' Rehabilitation Act claims that occurred more than 45 days before he contacted and Equal Employment Opportunity (EEO) counselor, there are a few additional facts that are not contained in Mr. Felts' complaint.  For those facts, the Court relies on and cites to the exhibits attached to defendants' motion and Mr. Felts' response.

Plaintiff Michael L. Felts worked for the United States Postal Service (USPS) for 33 years. *See* Doc. 10 ¶ 10.  From May 13, 2017, to January 31, 2019, he was employed as a Manager Customer Service with the USPS. *Id.* ¶ 8.  Mr. Felts lived and worked in Albuquerque, New Mexico. *See id.* ¶ 3.  Defendant Christopher Yazzie served as the Postmaster of the main post office in Albuquerque. *See id.* ¶ 6.

In July 2017, Mr. Felts became ill and subsequently suffered a series of serious medical conditions, including tumor, hernia, lung nodes, insomnia, stress/anxiety, and RSV (respiratory syncytial virus). *Id.* ¶¶ 15, 44.  Mr. Felts notified Postmaster Yazzie, MCSO (Manager, Customer Service Operations) Janelle Aragon, and Linda Hernandez of his condition, and kept them informed of the status of his condition between July 2017 and February 2018. *Id.* ¶¶ 17, 19, 44.  After Mr. Felts notified Postmaster Yazzie of his condition, Postmaster Yazzie became hostile toward Mr. Felts. *Id.* ¶ 18.  Postmaster Yazzie incessantly admonished Mr. Felts, embarrassed Mr. Felts on teleconferences[2] in front of his peers, increasingly issued Mr. Felts "fact findings" and "warnings with discipline," and claimed without basis that Mr. Felts was failing "to perform to the standards." *Id.*

In November 2017, Mr. Felts advised someone—presumably someone at the USPS—that he was dealing with extreme stress and anxiety, that he was very ill, and that he needed to take time off from work. *Id.* ¶ 20.  In December 2017, Postmaster Yazzie issued Mr. Felts a Letter of Warning (LOW) for an alleged failure by his assigned station to make eight proper scans. *Id.* ¶ 23.  The acting Officer in Charge expunged the LOW from Mr. Felts' record because he

---

[2] Mr. Felts refers to both "telecons" and "telecoms" in his complaint. *See, e.g.*, Doc. 10 ¶¶ 18, 25, 33, 40, 41.  The Court assumes both these words refer to teleconferences.

determined that Mr. Felts was disciplined for something that another coworker was not disciplined for. *Id.* ¶ 24.

At some point during the first five months of 2018,[3] Mr. Felts requested reasonable accommodation for his condition, and MCSO Aragon approved a change to Mr. Felts' schedule that allowed him to work 10:00 am to 7:00 pm. *Id.* ¶ 25; *see also* Doc. 19-1 ¶ 11. Mr. Felts was not required to attend the morning teleconferences. *Id.*

In February 2018, Mr. Felts was diagnosed with a thyroid tumor and lung nodes, which required him to take additional time off. Doc. 10 ¶ 21. Mr. Felts informed Postmaster Yazzie and MCSO Aragon of his diagnosis. *Id.* ¶ 22. Mr. Felts was away from work on FMLA protected leave for about four weeks. *Id.* ¶¶ 26, 27.

When Mr. Felts returned to work, he learned of a Postmaster position that had opened in Farmington. *Id.* ¶ 28. Mr. Felts applied for the position on April 4, 2018, in part because he wanted to get away from Postmaster Yazzie's "continued harassing and hostile conduct." *Id.*; *see also* Doc. 19-2 at 2 (stating date of application). Mr. Felts was interviewed for the Farmington Postmaster position on April 17, 2018, Doc. 19-2 at 2, but he was not hired, Doc. 10 ¶ 29; Doc. 19-2 at 2. Suzie Yarbro, the "MPOO" (Manager Post Officer Operations) and hiring official, told Mr. Felts he was not hired because she did not believe that Mr. Felts would be "available." Doc. 10 ¶ 29. Postmaster Yazzie had made the same statement about Mr. Felts. *Id.* MPOO Yarbro was the attendance control officer for the Albuquerque area and had access to Mr. Felts' medical and attendance records. *Id.* ¶ 31. She also had discussed the open Postmaster

---

[3] The Court presumes that Mr. Felts made his request early in 2018, but the first amended complaint is not clear on this point. Defendants concede that the modified work schedule was in place by June 2018. *See* Doc. 19 at 5, UMF 5 (noting that in June 2018, Postmaster Yazzie required Mr. Felts to dial into daily teleconferences at 7:15 am despite his modified work schedule).

position with Postmaster Yazzie.  *Id.*  Michael Korbas was selected as Postmaster of Farmington effective May 12, 2018.  Doc. 19-3.

In May 2018, Mr. Felts again became ill and was away from work for two weeks.  Doc. 10 ¶ 32.  In June, Mr. Felts was undergoing psychiatric treatment and prescription modifications which had debilitating side effects.  *Id.* ¶ 33.  In response, Postmaster Yazzie required Mr. Felts to attend the daily teleconferences beginning at 7:15 am, even though Mr. Felts was supposed to be "on respite" and despite his modified work schedule.  *Id.*; Doc. 19-1 ¶¶ 13, 14; Doc. 23-2 at 3.

On October 1, 2018, Postmaster Yazzie ordered Mr. Felts to conduct interviews of job applicants beginning at 8:00 am.  Doc. 10 ¶ 34.  Mr. Felts later was removed involuntarily from his station based on Postmaster Yazzie's allegations that he had failed to follow instructions and had delayed the mail.  *Id.*  The same day, Postmaster Yazzie berated Mr. Felts on the 3:30 pm Postmaster group teleconference by saying that Mr. Felts "couldn't do his job."  *Id.* ¶ 35.  Postmaster Yazzie called in a supervisor to close Mr. Felts' assigned station, demanded his postal identification, and removed Mr. Felts from his station for a week.  *Id.* ¶ 36.  No explanation was provided, and no discipline was issued.  *Id.*

When Mr. Felts returned to work, Postmaster Yazzie changed Mr. Felts' work schedule and told him another manager would be brought in to handle the opening duties through the holidays.  *Id.* ¶ 37.  The new work schedule was a significant departure from the one Mr. Felts had coordinated with MCSO Aragon.  *Id.*

On October 20, 2018, Postmaster Yazzie ordered all managers, including Mr. Felts, to go to their postal stations at 4:00 pm.  *Id.* ¶ 38; *see also* Doc. 19-1 ¶ 15 (stating that "Yazzie told all managers to be in the office to open their station, which meant that [Mr. Felts] needed to be in at 0500").  Mr. Felts told Postmaster Yazzie that he would not be able to attend because of his

medical restriction.  *Id.*  Postmaster Yazzie threatened Mr. Felts with discipline if he did not

attend.  *Id.*  Mr. Felts consequently drove to the main post office, but he was sent home when he

arrived.  Doc. 10 ¶ 39; Doc. 19-1 ¶ 15.  This exacerbated his symptoms.  *Id.*

      A month later, on November 20, 2018, Postmaster Yazzie asked Mr. Felts at the 3:00 pm

teleconference what time the rural routes would return.  Doc. 10 ¶ 40.  Mr. Felts told him it

would be about 9:00 pm.  *Id.*  "Postmaster Yazzie then berated and belittled Mr. Felts on the

telecom for undetermined reasons."  *Id.*  After the teleconference, Mr. Felts called Postmaster

Yazzie and told him that he would exceed his time restrictions because of the 9:00 pm rural route

return, and he asked him for help in closing the station.  *Id.* ¶ 41.  Postmaster Yazzie asked Mr.

Felts why he was calling him, and he told Mr. Felts to call the AM manager.  *Id.*  He also

changed Mr. Felts' duty hours to 2:00 pm to 10:00 pm.  *Id.*  Mr. Felts was the only supervisor

"chastised and demoralized" during the management teleconferences, and this increased after

Mr. Felts became ill and used approved FMLA leave and was given reasonable

accommodations.  *Id.* ¶ 43.

      Postmaster Yazzie "constantly" forced Mr. Yazzie to work past his medical hour

restrictions.  *Id.* ¶ 42.  On November 21, 2018, Postmaster Yazzie ordered Mr. Felts to bring in

the last mail carrier by 8:30 pm, whether the mail was delivered or not.  *Id.*  He then threatened

to return Mr. Felts to his regular hours and to continue to discipline him, saying that he "didn't

care what kind of deal" Mr. Felts had made with MCSO Aragon.  *Id.*  Five days later, Mr. Felts

requested leave through December 2018.  *Id.* ¶ 46.  Mr. Felts first contacted an EEO counselor

on December 6, 2018.  Doc. 19-4.  At the end of December, Mr. Felts requested and received

approval to take annual leave through January 2019 because of Postmaster Yazzie's constant

threats and changes to the schedule.  Doc. 10 ¶ 47.  On January 31, 2019, Mr. Felts retired from

the USPS under duress because of the "the continued and unending conduct by USPS employees." *Id.* ¶ 48.

## II.   **The First Amended Complaint and Defendants' Motion**

In Count I of his first amended complaint, Mr. Felts alleges that the USPS and Postmaster Yazzie interfered with his Family and Medical Leave Act (FMLA) benefits, in violation of 29 U.S.C. § 2615(a).  Doc. 10 ¶¶ 49–65.  In Count II, Mr. Felts alleges that the USPS and Postmaster Yazzie retaliated against him for taking FMLA leave, in violation of 29 U.S.C. § 2615(a).  Doc. 10 ¶¶ 66–80.  In Counts III and IV of his first amended complaint, Mr. Felts alleges that the USPS and Postmaster Yazzie discriminated against him and retaliated against him in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*  Doc. 10 ¶¶ 81–109.  In Count V, Mr. Felts alleges that the USPS and Postmaster Yazzie discriminated against him because of his disability, in violation of the Rehabilitation Act, 29 U.S.C. § 791 *et seq*.  Doc. 10 ¶¶ 110–30.

In their motion, defendants first argue that the Court should dismiss all FMLA claims that are clearly outside the three-year statute of limitations.  Doc. 19 at 6–7.  They also argue that Mr. Felts fails to state a claim for interference or retaliation under the FMLA.  *Id.* at 8–18. Defendants urge the Court to dismiss Mr. Felts' claims under the ADA because the ADA did not apply to Mr. Felts as a postal employee.  *Id.* at 18.  With respect to Mr. Felts' Rehabilitation Act claim, defendants argue that the only proper defendant is Louis DeJoy, the Postmaster General, and that Postmaster Yazzie should be dismissed.  *Id.* at 19.  They also argue that they are entitled to summary judgment on any claims relating to discrete acts occurring more than 45 days before Mr. Felts contacted an EEO counselor because those claims are not exhausted.  *Id.* at 19–21. Defendants also argue that the Court should dismiss Count V of the complaint because Mr. Felts

has failed to state a claim under the Rehabilitation Act.  *Id.* at 22–27.  The Court addresses each of defendants' arguments in turn.

### III.   Discussion

#### A.  Legal Standard

##### 1.   *Motion to Dismiss*

"To withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.' "  *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While " 'a court must accept as true all of the allegations contained in a complaint,' " this rule does not apply to legal conclusions.  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "[A] plaintiff must offer specific factual allegations to support each claim."  *Id.* (citation omitted).  A complaint survives only if it "states a plausible claim for relief."  *Id.* (citation omitted).

"Generally, a court considers only the contents of the complaint when ruling on a 12(b)(6) motion."  *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013).  In determining whether to grant the motion, the Court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff.  *Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007).  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.' "  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

If the parties present matters outside the complaint that are not excluded by the court in relation to a 12(b)(6) motion, then the court should treat the motion as one for summary judgment under Rule 56 and not as a motion to dismiss. FED. R. CIV. P. 12(d); *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384–85 (10th Cir. 1997). Notwithstanding this general rule, however, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado*, 493 F.3d at 1215 (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

The Court's ultimate duty is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). Dismissal is proper if the complaint lacks an allegation regarding an element necessary to obtain relief. *Emps.' Ret. Sys. of R.I. v. Williams Cos.*, 889 F.3d 1153, 1162–63 (10th Cir. 2018) (claims properly dismissed under Rule 12(b)(6) because plaintiff failed to allege required elements of duty, materiality, and scienter as required by Private Securities Litigation Reform Act).

### 2. *Motion for Summary Judgment*

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

8

The movant bears the initial burden of establishing that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). "[T]he movant need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)). If this burden is met, the non-movant must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Celotex*, 477 U.S. at 324. The non-moving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment. *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988). Rather, the non-movant has a responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (alteration in original) (internal quotation marks omitted).

At the summary judgment stage, the Court must view the facts and draw all reasonable inferences in the light most favorable to the non-movant. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court's function "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* Summary judgment may be granted where "the evidence is merely colorable, or is not significantly probative." *Id.* at 249–50 (internal citations omitted).

**B. Mr. Felts' FMLA Claims**

　　1. *Claims Arising Before April 22, 2018, are Barred.*

Defendants first argue that the statute of limitations bars any claims arising before April 22, 2018. Doc. 19 at 7–8. Mr. Felts filed his initial complaint on April 22, 2021. Doc. 1. Thus, defendants argue that claims arising more than three years prior to the filing of this case are barred.

Generally, a two-year statute of limitations applies to FMLA claims unless the alleged violation is willful, in which case a three-year statute of limitations applies. 29 U.S.C. §§ 2617(c)(1), (c)(2). Defendants concede that plaintiff alleged willfulness in both his original complaint and in his first amended complaint, so the three-year statute would apply. Doc. 19 at 7. Mr. Felts agrees that claims for damages under the FMLA occurring before April 22, 2018, are not actionable, but argues that events before that date may be introduced into evidence to prove defendants' animus and intention. Doc. 23 at 2–3.

Given Mr. Felts' concession that his FMLA claims are limited to conduct that occurred after April 22, 2018, the Court will dismiss any FMLA claims based on conduct that occurred before that date. This ruling, however, is without prejudice to Mr. Felts arguing at a later date that evidence of events that occurred before April 22, 2018, may be relevant and admissible even though he is not seeking damages for those particular events.

　　2. *Mr. Felts Fails to State a Claim for Interference Under the FMLA.*

Defendants next argue that Count I of Mr. Felts' first amended complaint—alleging interference with the FMLA—should be dismissed because it fails to state a plausible claim of interference. Doc. 19 at 8. Under 29 U.S.C. § 2615(a)(1), it is unlawful "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided

under this subchapter." To establish a prima facie claim[4] for FMLA interference, Mr. Felts must allege facts showing (1) that he was entitled to FMLA leave, (2) that some adverse action by the USPS or Postmaster Yazzie interfered with his right to take FMLA leave, and (3) that the adverse action was related to Mr. Felts' exercise or attempted exercise of his FMLA rights. *Jones v. Denver Public Schools*, 427 F.3d 1315, 1319 (10th Cir. 2005). To satisfy the second element, Mr. Felts must allege facts showing that he was prevented from taking the full 12 weeks of leave guaranteed under the FMLA, denied reinstatement after taking leave, or denied initial permission to take leave. *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007).

Here, Mr. Felts makes no allegations in his first amended complaint that he was prevented from taking 12 weeks of leave, or was not reinstated after taking leave, or was denied permission to take FMLA leave in the first place. *See generally* Doc. 10. In his response to defendants' motion, Mr. Felts highlights facts showing that Postmaster Yazzie harassed him and berated him after Mr. Felts was on leave,[5] but the facts alleged are not sufficient to show that either the USPS or Postmaster Yazzie interfered with his right to take FMLA leave. *See* Doc. 23 at 4–5.

Mr. Felts relies on a Ninth Circuit case, *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112 (9th Cir. 2001), to support his argument that "attaching negative consequences" to

---

[4] Although Mr. Felts is not required to establish a prima facie case in his complaint, "the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

[5] The first amended complaint does not always make clear whether Mr. Felts was on FMLA leave, or some other type of leave. *Compare* Doc. 10 ¶ 25 ("In February 2018, Mr. Felts was on FMLA protected leave from work . . . .") *with id.* ¶ 32 ("In May 2018, Mr. Felts became ill and was away from work for two (2) weeks.").

taking FMLA leave constitutes "interference" under § 2615(a)(1) because it tends to chill an employee from exercising those rights.  Doc. 23 at 5–6.  The Tenth Circuit, however, has not adopted this interpretation of the law.[6]  Instead, it has emphasized that "[t]his circuit has recognized two theories of recovery under [29 U.S.C.] § 2615(a):  an entitlement or interference theory arising from § 2615(a)(1), and a retaliation or discrimination theory arising from § 2615(a)(2)."  *Dalpiaz v. Carbon County, Utah*, 760 F.3d 1126, 1131 (10th Cir. 2014) (quoting *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir.2006)).  "These two theories of recovery are separate and distinct theories that 'require different showings[,] differ with respect to the burden of proof,' and "differ with respect to the timing of the adverse action.' "  *Id.* (quoting *Campbell*, 478 F.3d at 1287).  In particular, "an interference claim arises

---

[6] At least one court has recognized that different circuits have different views on what distinguishes an interference claim from a retaliation claim.  A district court in Massachusetts explained:

> Although the text of section 2615(a) does not reference "retaliation" explicitly, the First Circuit consistently has recognized such a cause of action is present in the statute and its supporting regulation.  *See Colburn [v. Parker Hannifin/Nichols Portland Div.]*, 429 F.3d [325], [ ] 331 [(1st Cir. 2005)]; *Hodgens [v. General Dynamics Corp.]*, 144 F.3d [151], [ ] 160–61 & n.4 [(1st Cir. 1998)] (citing 29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220(c)).  The applicable regulation reads:  "[t]he Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights."  29 C.F.R. § 825.220(c) (emphasis added).  Other circuits have held that claims of alleged retaliation for taking protected leave arise under FMLA's general discrimination provision, 29 U.S.C. section 2615(a)(2).  *See, e.g.*, *Brisk v. Shoreline Found., Inc.*, 654 Fed. Appx. 415, 416 (11th Cir. 2016); *Menekse v. Harrah's Chester Casino & Racetrack*, 649 Fed. Appx. 142, 145 (3rd Cir. 2016); *Spakes v. Broward Cnty. Sheriff's Office*, 631 F.3d 1307, 1308 (11th Cir. 2011); *Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008); *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004); *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002).

*Gourdeau v. City of Newton*, 238 F. Supp. 3d 179, 184 n.5 (D. Mass. 2017).  I, of course, must follow the law in the Tenth Circuit.

when an adverse employment decision is made before the employee has been allowed to take

FMLA leave or while the employee is still on FMLA leave." *Id.* at 1132.  In contrast, a

retaliation claim arises when the employee successfully takes FMLA leave, is restored to his or

her prior employment status, and then is adversely affected by an employment action based on

incidents post-dating the return to work.  *Id.* at 1132 n.3.

Mr. Felts' first amended complaint makes clear that his request for FMLA leave was

approved, he was allowed to take that leave, and he returned to his position when he returned

from FMLA leave.[7]  *See* Doc. 10 ¶¶ 25–27.  He therefore does not state a plausible claim for

interference.  The Court will dismiss Count I of the first amended complaint.

### 3.  *Plaintiff's Retaliation Claim Under the FMLA*

Defendants argue that the Court should dismiss Mr. Felts' retaliation claim under the

FMLA because he has not plausibly alleged any materially adverse employment actions, nor has

he plausibly alleged a causal connection between his FMLA leave and any materially adverse

employment action.  Doc. 19 at 10–18.  Under 29 U.S.C. § 2615(a)(2), it is unlawful "for any

employer to discharge or in any other manner discriminate against any individual for opposing

any practice made unlawful by this subchapter."  To establish a prima facie claim for FMLA

retaliation, Mr. Felts must allege facts showing (1) he engaged in a protected activity, (2) the

---

[7] Mr. Felts suggests in his response that he took more FMLA protected leave than the leave he took in February 2018.  *See, e.g.*, Doc. 23 at 1, 4, 7, 12, 13.  His first amended complaint, however, does not clearly state that any leave other than the leave he took in February 2018 was FMLA-protected leave.  *See* Doc. 10 ¶ 26.  Perhaps in recognition of this problem, Mr. Felts requests leave to amend his complaint if necessary to add "detailed information about the dates of used protected leave and the specific and additional instances of threats of discipline and adverse actions."  Doc. 23 at 1.  Because the Court dismisses Mr. Felts' FMLA interference claim without prejudice, he may seek leave of Court to file a second amended complaint if he wishes.  *See* FED. R. CIV. P. 15(a)(2).  The Court expresses no opinion as to whether it would grant such a motion.

USPS and/or Postmaster Yazzie took an action that a reasonable employee would have found materially adverse, and (3) there exists a causal connection between the protected activity and the adverse action. *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1229 (10th Cir. 2012). For an employment action to be materially adverse, it must be severe enough that it could "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006); *see also Metzler*, 464 F.3d at 1171 n.2 (noting that this test would apply in FMLA claims as well as Title VII claims).

a. <u>Materially Adverse Employment Action</u>

The parties do not dispute that Mr. Felts engaged in protected activity by using FMLA leave. *See* Doc. 19 at 10; Doc. 23 at 7. They disagree as to whether he suffered any adverse employment action. Mr. Felts alleges that while he was on FMLA leave and after, he was the only supervisor who was chastised and berated during teleconferences, that Postmaster Yazzie improperly disciplined him and required him to work "beyond his FMLA approved leave," that he was held accountable for deficiencies at his branch when he was on FMLA leave, and that he was denied a promotion because of his use of FMLA leave. *See* Doc. 10 ¶¶ 11–14, 29, 33–43. Although the timeline in the first amended complaint is not entirely clear,[8] Mr. Felts also alleges that after Postmaster Yazzie learned of Mr. Felts' illness and presumably after he took FMLA leave in February 2018, Postmaster Yazzie "became more hostile towards Mr. Felts" and incessantly admonished him, intentionally embarrassed him in front of his peers, issued

---

[8] Mr. Felts also points to the Letter of Warning ("LOW") he received in December 2017 as retaliation for taking FMLA leave. *See* Doc. 23 at 7 (citing to paragraph 23 of his first amended complaint). But because Mr. Felts did not take FMLA leave until February 2018, Doc. 10 ¶¶ 26, 27, the LOW could not have been in reaction to the protected activity. Even if the LOW did follow any FMLA protected activity, the LOW was expunged, and as such it was not materially adverse. *See Candelaria v. Potter*, 132 F. App'x, 225, 226 (10th Cir. 2005).

increased "fact findings and warnings with discipline," and made unwarranted claims that Mr.

Felts was not performing to standards.  *See id*. ¶ 18, 34–36, 39, 40, 42.  At the end of January

2019, Mr. Felts retired from the USPS under duress because of Postmaster Yazzie's[9] "continued

and unending conduct," essentially alleging he was constructively discharged from his position.

Doc. 10 ¶ 48.

At least some of this conduct qualifies as materially adverse employment actions.  Both

the denial of a promotion and a constructive discharge are adverse employment actions.  *See*

*Annett v. Univ. of Kansas*, 371 F.3d 1233, 1237 (10th Cir. 2004) ("An adverse employment

action constitutes a 'significant change in employment status, such as hiring, firing, *failing to*

*promote*, reassignment with significantly different responsibilities, or a decision causing a

significant change in benefits.' ") (Title VII case) (emphasis added); *Rennard v. Woodworker's*

*Supply, Inc.*, 101 F. App'x 296, 308–09 (10th Cir. 2004) (unpublished) ("Constructive discharge

. . . is a materially adverse employment action.").  Although the Tenth Circuit has not yet

addressed whether a hostile work environment can constitute FMLA retaliation, severe "co-

worker hostility or retaliatory harassment" can qualify as adverse employment actions under

Title VII.  *See Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1264 (10th Cir. 1998) ("co-

worker hostility or retaliatory harassment, if sufficiently severe, may constitute 'adverse

employment action' " for Title VII retaliation claim).  And at least some circuits appear to

recognize that a retaliatory hostile work environment claim may be brought under the FMLA.

*See, e.g.*, *Wyatt v. Nissan North America, Inc.*, 999 F.3d 400, 427–28 (6th Cir. 2021)

(considering but rejecting plaintiff's claim of retaliatory harassment under FMLA because it was

---

[9] Mr. Felts says he retired because of the "continued and unending conduct by USPS employees," Doc. 10 ¶ 48, but he only identifies Postmaster Yazzie as the perpetrator of that conduct, *see generally id*.

not severe or pervasive enough); *Tarpley v. City Colleges of Chicago*, 752 F. App'x 336, 346–49 (7th Cir. 2018) (unpublished) (discussing employee's claim that she was subjected to a hostile work environment because of her FMLA leave).  Given that the FMLA's anti-retaliation provision is similar to Title VII's anti-retaliation provision, *compare* 42 U.S.C. § 2000e-3(a) *with* 29 U.S.C. § 2615(a)(2), it seems likely that the Tenth Circuit eventually will recognize a retaliatory hostile work environment claim under the FMLA.  Thus, Mr. Felts has alleged at least three materially adverse employment actions in relation to his retaliation claim:  denial of a promotion, retaliatory hostile work environment, and constructive discharge.

Defendants argue that Mr. Felts retaliatory hostile work environment allegations are inadequate because the harassment he suffered was not sufficiently severe or pervasive enough to create an abusive working environment.  *See* Doc. 19 at 12–13.  Defendants argue that there was only one instance of Postmaster Yazzie arguably making a reference to Mr. Felts' FMLA leave—a comment about whether Mr. Felts would be "available"—and that this comment, in isolation, was insufficient to prove anything other than normal job stresses and personality conflicts.  *See id.* at 13.  The Court disagrees.  In his first amended complaint, Mr. Felts has alleged sufficient facts to at least plausibly state a retaliatory hostile work environment claim. He has alleged that Postmaster Yazzie's attitude towards him changed when he was diagnosed with a serious medical condition and after he took FMLA leave; that Postmaster Yazzie "constantly" singled him out to ridicule and berate him in front of his peers; that Postmaster Yazzie threatened to discipline him for no reason; that Postmaster Yazzie took Mr. Felts' ID and involuntarily removed him from his workstation without explanation; that Postmaster Yazzie required Mr. Felts to work outside of his modified work schedule hours; that Postmaster Yazzie stated that Mr. Felts would not be "available"; and that he threatened to return Mr. Felts to his

regular hours, stating that he "didn't care what kind of deal" Mr. Felts had made with the person who approved his modified work schedule. *See* Doc. 10 ¶¶ 18, 29, 34–36, 42, 43. This behavior was sufficiently severe that it could dissuade a reasonable worker from taking FMLA leave.[10] *See Metzler*, 464 F.3d at 1171 n.2.

"Constructive discharge occurs when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." *Sanchez v. Denver Pub. Sch.,* 164 F.3d 527, 534 (10th Cir. 1998) (internal quotation marks omitted). Defendants argue that because Mr. Felts does not allege sufficient facts to state a retaliatory hostile work environment claim, he *a fortiori* does not state a claim for constructive discharge. Doc. 19 at 14. Because the Court has found that Mr. Felts has alleged sufficient facts to make a retaliatory hostile work environment claim, this argument fails.

Defendants also argue that Mr. Felts cannot make a constructive discharge claim because he was on leave when he retired, purportedly under duress. Defendants rely mostly on cases outside the Tenth Circuit to support their argument that if a plaintiff is on leave when he or she resigns, the working conditions could not have been so intolerable that the plaintiff was forced to resign. Doc. 19 at 14–15. None of the cases cited by defendants are binding on this Court, nor do they suggest that a plaintiff could never succeed on a constructive discharge claim if the plaintiff is on leave when he or she is "forced to resign." Although Mr. Felts ultimately may not be able to prove that he was "forced to retire," the fact that he was on leave when he decided to do so does not necessarily preclude his constructive discharge claim.

---

[10] Defendants argue that Mr. Felts "wasn't subjected to any offensive remarks, intimidation, ridicule, insult, physical threats or humiliation." Doc. 28 at 6 (quoting *Dye v. Moniz*, 672 F. App'x 836, 840 (10th Cir. 2016) (unpublished)). But Mr. Felts alleges that Postmaster Yazzie intimidated him, ridiculed him, insulted him, and humiliated him after he took FMLA leave. At this stage of the litigation, these allegations are sufficient.

b.  Causal Connection

Defendants also urge the Court to dismiss the first amended complaint because Mr. Felts has failed to plausibly allege a causal connection between his FMLA leave and any materially adverse employment action.  Doc. 19 at 15–18.  Defendants rely entirely on the premise that there is not close enough temporal proximity between Mr. Felts' FMLA leave and any materially adverse employment action.  *See id.*  Temporal proximity alone may create an inference of a causal connection between the taking of FMLA leave and the adverse employment if it "is *very closely* connected in time."  *Metzler*, 464 F.3d at 1171.  Defendants take the position that six weeks is sufficiently close in time, whereas three months is not.  *See* Doc. 19 at 15; *see also Metzler*, 464 F.3d at 1171–72.

Here, the first amended complaint is not entirely clear on the timeline of events.  However, documents attached to defendants' motion provide a few more specific dates.[11]  *See* Docs. 19-2, 19-3.  Mr. Felts took approximately four weeks of FMLA leave beginning in February 2018, which means he would have returned to work sometime in March 2018.  *See* Doc. 10 ¶¶ 26, 27.  In early April, he applied for a Postmaster position in Farmington, and he interviewed for that position in mid-April.[12]  Doc. 19-2 at 2.  Mr. Felts was not selected for the

---

[11] Although generally the Court may not consider any documents outside the complaint in deciding a motion to dismiss, it cannot ignore that defendants' own documents provide some of the dates missing from the complaint.  The Court sees no point in dismissing the first amended complaint with leave to amend so that Mr. Felts can add dates to his complaint that are readily available to defendants and are found in documents attached to their motion to dismiss.

[12] The Court has dismissed any FMLA claims arising before April 22, 2018.  According to defendants, Mr. Felts interviewed for the Farmington Postmaster position on April 17, 2018.  Doc. 19-2 at 2.  A document submitted by Mr. Felts suggests that he still had not learned that he was not selected for the position on April 25, 2018.  *See* Doc. 23-1 at 6.  Because the limitations period begins on the date that USPS notified Mr. Felts that he was not hired for the Farmington Postmaster position, *see Daniels v. United Parcel Service, Inc.*, 701 F.3d 620, 628 (10th Cir. 2012), it appears that this failure-to-promote claim is not time-barred.

position; the hiring official told him that she did not think he would be "available."  Doc. 10 ¶ 29.  The person who was selected for the position became the Postmaster in Farmington effective May 12, 2018—within about two months of the end of Mr. Felts' FMLA leave.  Doc. 19-3.  But more importantly, Mr. Felts is not relying *solely* on temporal proximity to support the causation element.  The hiring official told Mr. Felts that she did think Mr. Felts would be "available," which the Court reasonably can infer was a reference to Mr. Felts' recent FMLA leave.

Defendants also argue that Mr. Felts does not allege in his complaint that the refusal to hire him for the Farmington Postmaster was in retaliation for him taking FMLA leave.  Doc. 19 at 16; Doc 28 at 5.  However, in paragraph 66 of his first amended complaint—the first paragraph of his retaliation claim, Mr. Felts "restates and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein."  Doc. 10 ¶ 66.  In paragraph 60, he alleges that "USPS denied Mr. Felts a promotion and transfer in 2018 alleging concerns about his ability to work," and the factual allegations make clear that this occurred relatively soon after he took FMLA leave.  *See id.* ¶¶ 26–29, 60.  Thus, Mr. Felts plausibly alleges that he was denied a promotion in retaliation for taking FMLA leave.

With respect to the hostile work environment claim, because the first amended complaint is imprecise about the dates of any FMLA leave other than the leave taken in February 2018, the Court relies on that date to determine whether Mr. Felts plausibly alleges a causal connection between his FMLA leave and the hostile work environment.  But again, Mr. Felts does not rely *solely* on temporal proximity to show the causal connection.  After Mr. Felts took four weeks of FMLA leave in February 2018, Postmaster Yazzie made a pejorative comment about Mr. Felts'

"availability"; in October 2018, he told Mr. Felts that he "couldn't do his job"; and in November 2018, Postmaster Yazzie threatened to return Mr. Felts to his regular hours and to discipline him, saying that he "didn't care what kind of deal" he had made with the person who had approved his modified work schedule.  *See* Doc. 10 ¶¶ 26, 29, 34–36, 42, 43.  Viewing these allegations in the light most favorable to Mr. Felts, these comments suggest that Postmaster Yazzie was treating Mr. Felts with hostility because of both his FMLA leave and his modified work schedule.  Mr. Felts plausibly has alleged a causal connection between his FMLA leave and the hostile work environment created by Postmaster Yazzie.

Finally, defendants argue that Mr. Felts has not alleged a plausible connection between his constructive discharge and his FMLA leave.  Doc. 19 at 17.  However, viewing the first amended complaint in the light most favorable to Mr. Felts, he essentially alleges that Postmaster Yazzie made his work environment so miserable that he could not go back to work. Thus, once he exhausted all his leave, including his annual leave, he retired under duress.  A case of "constructive discharge . . . can be regarded as an aggravated case of . . . hostile work environment."  *Penn. State Police v. Suders*, 542 U.S. 129, 146 (2004).  Because Mr. Felts plausibly alleges that the hostile work environment was causally connected to his FMLA leave, and his constructive discharge claim is the natural culmination of that claim, Mr. Felts also has plausibly alleged that his constructive discharge claim is causally connected to his FMLA leave. At this stage of the proceedings, the Court declines to dismiss Mr. Felts' FMLA retaliation claims based on failure to promote, hostile work environment, and constructive discharge.

### C.  Mr. Felts' ADA Claims

Defendants next argue that the Court should dismiss Mr. Felts' ADA claims—Counts III and IV—because the ADA does not apply to federal employees.  *See* 42 U.S.C. § 12111(5)(B)

("The term 'employer' does not include . . . the United States . . . ."); *Brown v. Austin*, 13 F.4th 1079, 1084 n.3 (10th Cir. 2021) (noting that the ADA does not apply to federal employers).  In his response, Mr. Felts agreed to withdraw his ADA claims.  *See* Doc. 23 at 10 n.1.  The Court therefore will dismiss Counts III and IV of the first amended complaint.

### D.  Mr. Felts' Rehabilitation Act Claims

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . .  shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination . . .  under any program or activity conducted by . . .  the United States Postal Service."  29 U.S.C. § 794(a).  The Rehabilitation Act further states that "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under . . . the Americans with Disabilities Act of 1990 . . . ."  29 U.S.C. § 794(d).  Courts therefore look to the ADA for guidance in resolving Rehabilitation Act claims, *Jarvis v. Potter*, 500 F.3d 1113, 1121 (10th Cir. 2007), and the Court cites to both ADA and Rehabilitation Act cases throughout this section.

#### 1.  *Claims Against Postmaster Yazzie*

Defendants first argue that any Rehabilitation Act claims against Postmaster Yazzie should be dismissed because the only proper defendant under the Rehabilitation Act is the head of the department, agency, or unit.  *See* Doc. 19 at 19.  In his response, Mr. Felts agreed to withdraw his Rehabilitation Act claims against Postmaster Yazzie.  *See* Doc. 23 at 10 n.1.  The Court therefore will dismiss any Rehabilitation Act claims to the extent that they purport to be against Postmaster Yazzie.

2.  *Exhaustion of Rehabilitation Act Claims*

Defendants[13] next argue that the Court should dismiss any discrete Rehabilitation Act

claims that occurred before October 22, 2018, because Mr. Felts failed to administratively

exhaust these claims.  *See* Doc. 19 at 19–21.  The parties agree that Mr. Felts was obligated to

exhaust his administrative remedies under the Rehabilitation Act, and that he is barred from

bringing claims for discrete acts that occurred before October 22, 2018.  *Compare id. with* Doc.

23 at 14.  They disagree, however, as to what constitutes a discrete act, and whether certain acts

may be part of a continuing violation claim.  *See id.*

"Federal employees alleging discrimination or retaliation prohibited by . . . the

Rehabilitation Act must comply with specific administrative complaint procedures in order to

exhaust their administrative remedies."  *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir.

2020) (internal quotation marks and citation omitted).  Part 1614 of Chapter 29 of the Code of

Federal Regulations sets forth the applicable procedures.  *See id.*  Before a federal employee can

sue his or her employer for discrimination or retaliation under the Rehabilitation Act, the

employee must "initiate contact" with an EEO counselor at the employee's agency "within 45

days of the date of the matter alleged to be discriminatory or, in the case of a personnel action,

within 45 days of the effective date of the action."  29 C.F.R. § 1614.105(a)(1)).  The employee

also must file a formal complaint with the agency that is "sufficiently precise . . . to describe

generally the action(s) or practice(s) that form the basis of the complaint."  29 C.F.R.

§§ 1614.106(a), (b), (c).  Once the employee receives the agency's final decision, the employee

---

[13] Although the Court will dismiss the Rehabilitation Act claims against Postmaster Yazzie, the
Court still will refer to the "Defendants" in this section as they brought the motion together.  *See*
Doc. 19 at 1.

must file a civil action in federal district court within a specified period of time if the employee is dissatisfied with the agency's decision. *See* 29 C.F.R § 1614.110.

The exhaustion requirement is a claims-processing rule that an employer may raise as an affirmative defense;[14] it is not a jurisdictional prerequisite to filing suit. *Hickey*, 969 F.3d at 1118; *see also Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018) ("[A] plaintiff's failure to file an EEOC charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim."). Because it is a mandatory rule, courts must enforce the exhaustion requirement if the employer properly raises it. *See Fort Bend County, Texas v. Davis*, 139 S. Ct. 1843, 1849–52 (2019).

In this case, there is no dispute that Mr. Felts initiated contact with his agency's EEO counselor on December 6, 2018. Doc. 19 at 6, Undisputed Material Fact ("UMF") 8; *see also* Doc. 23 at 11 (stating that UMFs 1 through 8 are undisputed). Consequently, discrete claims that arose before October 22, 2018—if not part of a continuing hostile work environment claim—are barred. Defendants argue that the LOW issued to Mr. Felts in December 2017 and the failure to promote Mr. Felts in May of 2018 are both discrete acts that are not part of a continuing violation/hostile work environment claim. *See* Doc. 19 at 20–21. They similarly argue that each time Postmaster Yazzie required Mr. Felts to work outside his modified work schedule constituted a discrete act, and that each occurrence must be barred if it occurred before

---

[14] "Although failure to exhaust is . . . an affirmative defense, it may be raised in a motion to dismiss when the grounds for the defense appear on the face of the complaint." *Cirocco v. McMahon*, 768 F. App'x 854, 858 (10th Cir. 2019) (unpublished) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)). Here, however, defendants are seeking summary judgment—not dismissal under FED. R. CIV. P. 12(b)(6)—on Rehabilitation Act claims to the extent that they are based on any discrete act occurring before October 22, 2018. *See* Doc. 19 at 19.

October 22, 2018.  *See id.* at 21.  Mr. Felts argues that all of these events were part of a continuing course of conduct that spanned from before October 22, 2018, and continued until after that date.  *See* Doc. 23 at 14–16.  The Court agrees with defendants that the LOW and the failure to promote are discrete acts that are barred because they occurred before the limitations period.  But it agrees with Mr. Felts that Postmaster Yazzie's regular disregard for Mr. Felts' modified work schedule is part of Mr. Felts' hostile work environment claim.

In 2002, the Supreme Court held that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" are separate actionable unlawful employment practices, and an employee must file a charge with the appropriate agency to cover each such act within the appropriate time period.  *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).  *Morgan* eliminated the continuing violation doctrine for discrete acts of discrimination.  *Davidson v. America Online, Inc.*, 337 F.3d 1179, 1185 (10th Cir. 2003).  A discrete act of discrimination occurs on the day it happens, and the duty to exhaust that claim begins running the same day.  *See Morgan*, 536 U.S. at 110–15.  On the other hand, hostile work environment claims are different and are based on the cumulative effect of individual acts over a period of time.  *Id.* at 115.  To be timely, an employee need only file a charge within the appropriate time period of any act that is part of the hostile work environment claim.  *Id.* at 118.  Thus, in this case, any act that occurred before October 22, 2018, is properly exhausted if it is sufficiently related to acts that occurred after October 22, 2018, if all acts are part of a single hostile work environment claim.

In *Duncan v. Manager, Dept. of Safety, City and County of Denver*, 397 F.3d 1300, 1308–09 (10th Cir. 2005), the Tenth Circuit provided some guidance on how to determine whether different acts are part of a single hostile work environment claim or discrete acts of

discrimination.  The Court held that there must be a relationship between the pre-limitations

period acts and the post-limitations period acts.  *See id*.  The requisite relationship is shown if the

incidents are of the same type, "occurred relatively frequently, and were perpetrated by the same

managers."  *Id.* at 1309.

Here, the earliest adverse act alleged in the first amended complaint is the LOW that was

issued in December 2017 but expunged shortly thereafter.  The Tenth Circuit has held that a

USPS letter of warning followed by a 14-day suspension is a discrete act of discrimination that

must be separately exhausted.  *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003).  Thus,

even though the LOW was issued by Postmaster Yazzie—the same manager who perpetrated

almost all the other acts about which Mr. Felts complains—it is a discrete act that Mr. Felts did

not timely exhaust.[15]  The Court therefore grants summary judgment in favor of the USPS to the

extent that Mr. Felts is alleging a discrete act of discrimination under the Rehabilitation Act

based on the LOW.  This ruling has no bearing on whether the LOW would be admissible at trial

as background evidence in support of a properly exhausted claim.  *See id.*

Defendants also argue that Mr. Felts failure to promote claim under the Rehabilitation

Act was not properly exhausted.  The Tenth Circuit similarly has held that a failure to promote is

a discrete act of discrimination that must be separately exhausted.  *See Daniels v. United Parcel*

---

[15] Mr. Felts argues that the repeated violations doctrine applies to acts that occurred before
October 22, 2018.  *See* Doc. 23 at 14–15.  Under this theory, Mr. Felts argues that he could
recover for injuries that he suffered within the limitations period.  This theory is not applicable
here.  "[T]he continuing violation doctrine . . . is triggered by continual unlawful acts, not by
continual ill effects from the original violation."  *Hamer v. City of Trinidad*, 924 F.3d 1093, 1099
(10th Cir. 2019) (internal quotation marks omitted).  Here, USPS did not continually issue
LOWs to Mr. Felts; Postmaster Yazzie only issued one.  But even if Mr. Felts could recover for
injuries he continued to suffer within the limitations period, there is nothing in the first amended
complaint that suggests that Mr. Felts continued to suffer injuries from the LOW after October
22, 2018.  The LOW was issued in December 2017 and was expunged shortly thereafter, well
before the limitations period,

*Service, Inc.*, 701 F.3d 620, 628 (10th Cir. 2012) (each failure to promote is a separate discrete act of discrimination, and neither claim was timely filed); *Mitchell v. City and County of Denver*, 112 F. App'x 662, 669 (10th Cir. 2004) (unpublished) ("A failure to promote is a discrete act subject to the . . . statutory time limit for filing a claim."). Because Mr. Felts did not timely exhaust his failure-to-promote claim under the Rehabilitation Act, the Court will grant summary judgement in favor of the USPS on this claim. Again, this ruling has no bearing on whether the failure to promote would be admissible at trial as background evidence in support of a properly exhausted claim.

Defendants argue that every time Postmaster Yazzie required Mr. Felts to work outside of his modified hours were discrete acts of denying Mr. Felts' reasonable requests for accommodation. Doc. 19 at 21. The Court does not agree. Here, the USPS *granted* Mr. Felts' request for reasonable accommodation by modifying his work schedule. Mr. Felts' claim is that Postmaster Yazzie, as part of his continuing harassment of Mr. Felts, repeatedly required Mr. Felts to work outside of his modified work schedule or face discipline. Defendants' undisputed facts establish that Postmaster Yazzie required Mr. Felts to work outside his modified work schedule in June 2018,[16] on October 1, 2018, and on October 20, 2018. Doc. 19 at 5–6, UMFs 5–7. In November 2018, Postmaster Yazzie again required Mr. Felts to work outside his modified work schedule, and also changed his schedule. Doc. 10 ¶ 41. Mr. Felts alleges that throughout this time, Postmaster Yazzie "constantly" ridiculed and berated him in front of his peers and threatened to discipline him for no reason. *See id.* ¶¶ 18, 35, 40, 43, 47. Postmaster

---

[16] Reading the first amended complaint in the light most favorable to Mr. Felts, the Court infers that Postmaster Yazzie *began* to require that Mr. Felts participate in the daily morning teleconferences in June 2018, and that this continued while Mr. Felts was working for the USPS and not on leave.

Yazzie was always the perpetrator, the acts were similar to each other, and they occurred relatively frequently.  In other words, the requirement that Mr. Felts work outside of his modified hours is part of Mr. Felts' hostile work environment claim, and each occurrence did not constitute a discrete act of discrimination that itself was actionable.  The Court will not grant summary judgment in favor of the USPS with respect to Postmaster Yazzie's requirement that Mr. Felts work outside his modified work schedule.

3. *Hostile Work Environment Claim under the Rehabilitation Act*

Defendants argue that Mr. Felts has failed to state a hostile work environment claim under the Rehabilitation Act.  Doc. 23 at 22–23.  The elements of a hostile work environment claim under the Rehabilitation act are: (1) the plaintiff is disabled as defined under the Rehabilitation Act; (2) the plaintiff was subject to unwelcome harassment; (3) the harassment was based on the plaintiff's disability; and (4) "due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment." *Callahan v. Communication Graphics, Inc.*, 657 F. App'x 739, 746–47 (10th Cir. 2016).  Defendants argue that the allegations in the first amended complaint fail to plausibly assert that the harassment Mr. Felts suffered at the hands of Postmaster Yazzie was because of his disability.  The Court disagrees.

In addition to alleging that Postmaster Yazzie regularly ridiculed and berated him in front of others, regularly threatened him with discipline for no reason, and regularly required that Mr. Felts work outside his modified work schedule, Mr. Felts also alleges several facts from which the Court concludes that Postmaster Yazzie harassed Mr. Felts because of his disability.  First, Mr. Felts specifically alleges that Postmaster Yazzie was kept apprised of his health problems and therefore knew of his disability.  *See* Doc. 10 ¶¶ 17, 19, 44.  After learning of Mr. Felts'

condition, Postmaster Yazzie started to harass Mr. Felts. *Id.* ¶ 18.  Postmaster Yazzie also remarked that Mr. Felts was not "available," which the Court reasonably can infer was a reference to Mr. Felts' absences because of his health condition. *Id.* ¶ 9.  In addition, Postmaster Yazzie ultimately told Mr. Felts that he was going to return him to his regular hours, and that he didn't care what kind of deal Mr. Felts had made with the official who had approved his modified work schedule. *Id.* ¶ 42.  Reading the first amended complaint in the light most favorable to Mr. Felts, Postmaster Yazzie's remarks and the timing of his harassment show that he resented the reasonable accommodation that had been afforded to Mr. Felts because of his disability and harassed him because of this.  Mr. Felts plausibly alleges that Postmaster Yazzie harassed Mr. Felts because of his disability.

Also, to the extent that defendants argue Mr. Felts has failed to allege harassment that was severe or pervasive enough to create an abusive working environment, the Court rejects this argument for the same reasons it rejected it with respect to Mr. Felts' FMLA claim. Furthermore, Mr. Felts alleges that Postmaster Yazzie's harassment exacerbated his physical condition and eventually forced him to retire, which altered Mr. Felts' employment.  At this stage of the proceedings, Mr. Felts has plausibly alleged a hostile work environment claim under the Rehabilitation Act.

### 4.  *Disparate Treatment Claim under the Rehabilitation Act*

Defendants argue that Mr. Felts has failed to state a disparate treatment claim under the Rehabilitation Act.  Doc. 19 at 23–24.  To state such a claim under the Rehabilitation Act, Mr. Felts must allege (1) that he is disabled within the meaning of the Rehabilitation Act; (2) that he is qualified for the job he held; and (3) that USPS discriminated against him because of his disability.  *See Lincoln*, 900 F.3d at 1192.  Mr. Felts must allege that he suffered an adverse

employment action as a result of the discriminatory conduct.  *See Exby-Stolley v. Board of Count Commissioners*, 979 F.3d 784, 794 (10th Cir. 2020) (en banc) (stating that Tenth Circuit had made clear that disparate-treatment claims under the ADA required an adverse employment action).  Defendants argue that the only adverse employment actions that Mr. Felts plausibly alleges are the failure to promote and his constructive discharge.  Because the Court has granted summary judgment in favor of the USPS on Mr. Felts' failure-to-promote claim under the Rehabilitation Act, the Court will not address that claim.  With respect to the constructive discharge claim, the Court already has held that Mr. Felts has plausibly alleged a hostile work environment claim, the natural culmination of which was his forced retirement.  Thus, Mr. Felts plausibly alleges two adverse employment actions under the Rehabilitation Act: a hostile work environment and constructive discharge.  And as discussed elsewhere in this opinion, Mr. Felts has plausibly alleged that he was subjected to a hostile work environment because of his disability, which resulted in his forced retirement.  Mr. Felts therefore has plausibly alleged a disparate treatment claim under the Rehabilitation Act.

### 5.   *Retaliation Claim under the Rehabilitation Act*

Defendants argue that Mr. Felts has failed to state a retaliation claim under the Rehabilitation Act.  Doc. 19 at 24–25.  To state a prima facie case of retaliation under the Rehabilitation Act, Mr. Felts must allege facts that show "(1) he engaged in a protected activity; (2) he was subjected to an adverse employment action subsequent to or contemporaneous with the protected activity; and (3) there was a causal connection between the protected activity and the adverse employment action."  *Foster v. Mountain Coal Company, LLC*, 830 F.3d 1178, 1186–87 (10th Cir. 2016) (internal quotation marks and brackets omitted).  Defendants argue that the only protected activity that Mr. Felts engaged in was requesting reasonable

accommodation, and that because he does not state when he requested this accommodation, there is no way to determine whether there is temporal proximity between any adverse employment action.  *See* Doc. 19 at 24–25.  Mr. Felts responds that after he requested reasonable accommodation, he was subjected to a retaliatory hostile work environment and ultimately was forced to retire.  *See* Doc. 23 at 16–18.  For reasons similar to those relating to the FMLA claim, the Court finds that Mr. Felts has stated a retaliatory hostile work environment claim under the Rehabilitation Act.

Although the Court could not find a Tenth Circuit case directly on point, other Circuits seem to recognize the viability of retaliatory hostile work environment under the Rehabilitation Act, and the Court views this as a possible claim as well, just as it was under the FMLA.  *See Williams-Evans v. Advance Auto Parts*, 843 F. App'x 144, 149 (11th Cir. 2021) (unpublished) (recognizing possibility of retaliatory hostile work environment claim under the ADA); *Pistello v. Board of Education of Canastota Central School Dist.*, 808 F. App'x 19, 23 (2d Cir. 2020) (unpublished) (same); *Sepulveda-Vargas v. Caribbean Restaurants, LLC*, 888 F.3d 549, 557 (1st Cir. 2018) (same).  Defendants rely entirely on the argument that because the first amended complaint does not state the date on which he requested reasonable accommodation, the Court cannot determine the temporal proximity between the request and the adverse employment action.  *See* Doc. 19 at 24–25; Doc. 28 at 10–11.

Reading the first amended complaint in the light most favorable to Mr. Felts, Mr. Felts specifically requested reasonable accommodation and FMLA leave at the same time, and the USPS granted FMLA leave by February 2018.  Doc. 10 ¶¶ 25, 26.  The modified work schedule was in place by June 2018.  *See id.* ¶ 33.  Thus, the first amended complaint alleges that Mr. Felts requested reasonable accommodation in early 2018, and the hostile work environment

began around the same time.  Thus, there is temporal proximity between the protected activity

and the adverse employment action.  Furthermore, Mr. Felts does not rely *solely* on temporal

proximity to support the causation element.  Mr. Felts specifically alleges that as part of his

harassment, Postmaster Yazzie threatened to return Mr. Felts to his regular hours, saying that he

didn't care what kind of deal he had made with the official who had approved Mr. Felts' request

for reasonable accommodation.  Doc. 10 ¶ 42.  The Court reasonably infers that this is a

reference to Mr. Felts' request for reasonable accommodation.  And, as stated above, Mr. Felts'

constructive discharge claim is the natural culmination of his retaliatory hostile work

environment claim.  Mr. Felts therefore states a plausible claim of retaliation under the

Rehabilitation Act.

### 6.  *Failure-to-Accommodate Claim under the Rehabilitation Act*

Defendants argue that Mr. Felts has failed to state a failure-to-accommodate claim under

the Rehabilitation Act.  Doc. 19 at 25–27.  To state a prima facie case of a failure-to-

accommodate claim under the Rehabilitation Act, Mr. Felts must allege that (1) he is disabled;

(2) he is otherwise qualified; (3) he requested reasonable accommodation; and (4) the USPS

refused to accommodate his disability.  *See Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir.

2020).  Here, Mr. Felts alleges that he is disabled, otherwise qualified, requested reasonable

accommodation, and that the USPS reasonably accommodated his disability by modifying his

work schedule, but that Postmaster Master "denied and/or retracted reasonable accommodations"

by requiring him to work outside of his modified schedule and using a change of scheduling as a

threat of discipline.  Doc. 10 ¶¶ 25, 115–118, 120.  Reading the first amended complaint in the

light most favorable to Mr. Felts, the first amended complaint establishes that Postmaster

Yazzie's consistent refusal to adhere to the modified work schedule had the practical effect, over time, of USPS failing to accommodate Mr. Felts' disability despite its agreement to do so.

The Court is not convinced, however, that this conduct falls within a failure-to-accommodate claim. Mr. Felts alleged that he requested reasonable accommodation, which the USPS granted in the form of a modified work schedule. Doc. 10 ¶ 25. This schedule specifically did not require him to attend the morning teleconferences. *See id.* The official who approved this change was not Postmaster Yazzie. *See id.* But after Mr. Felts requested this reasonable accommodation, Postmaster Yazzie started to harass him, and that harassment included repeated requirements that he work outside of his modified work schedule. There is no allegation in the first amended complaint that Mr. Felts requested reasonable accommodation every time Postmaster Yazzie required him to work outside his modified work schedule, nor is it evident that each one of these incidents would be actionable on its own. Instead, the cumulative effect of these requirements, along with the threats of discipline if he did not comply, the "constant" ridicule and beratement, and Postmaster Yazzie's comments relating to Mr. Felts' "availability" and competence, all combine to form a hostile work environment claim, not a failure-to-accommodate claim. The Court will dismiss Mr. Felts' failure-to-accommodate claim under the Rehabilitation Act.

## IV.   <u>Conclusion</u>

For the foregoing reasons, the Court GRANTS in part and DENIES in part defendants Louis DeJoy and Christopher Yazzie's Motion to Dismiss and for Partial Summary Judgment. The Court dismisses Mr. Felts' FMLA claims to the extent that they are based on conduct that occurred prior to April 22, 2018. The Court also dismisses Mr. Felts' claim for interference under the FMLA (count 1 of the first amended complaint). The Court dismisses Mr. Felts' ADA

claims (counts III and IV of the first amended complaint).  The Court dismisses Mr. Felts'

Rehabilitation Act claims against Postmaster Yazzie.  The Court grants summary judgment in

favor of the USPS on Mr. Felts' Rehabilitation Act claims to the extent that they are based on the

discrete acts of issuing the LOW in December 2017 and failing to promote him in May 2018.

The Court dismisses Mr. Felts' failure-to-accommodate claim under the Rehabilitation Act.  The

Court DENIES the defendants' Motion to Dismiss and for Partial Summary Judgment in all

other respects.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent